WILLIAM P. BARR
Attorney General
ROBERT S. BREWER, JR.
United States Attorney
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI S. GANDHI, CBN 272246
COLIN M. MCDONALD, CBN 286561
Special Attorneys to the Attorney General
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144
michael.wheat@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE P. KEALOHA,<br><br>Defendant. | CR NO. 17-00582 JMS-WRP<br>CR NO. 18-00068 JMS-WRP<br>CR NO. 19-00015 JMS-WRP<br><br>UNITED STATES' SENTENCING MEMORANDUM AS TO DEFENDANT KATHERINE P. KEALOHA (REDACTED)<br><br>Date:   March 17, 2020<br>Time:   9:30 a.m.<br>Judge:  Hon. J. Michael Seabright |

## UNITED STATES' SENTENCING MEMORANDUM

A prosecutor is backed by the awesome power of the state and entrusted to professionally and ethically abide by the rule of law. When a prosecutor commits a crime by breaking the very laws they have sworn to uphold, the public's trust in the

criminal justice system suffers. For a decade, Defendant Katherine Kealoha—a trusted attorney, director of a significant State agency, and high-ranking city prosecutor—repeatedly abused her positions of trust and power to enrich herself, protect her friends, and vanquish her foes. In her capacity as an attorney, Katherine Kealoha stole hundreds of thousands of dollars from the most vulnerable in Honolulu: minor children, the elderly, the unsophisticated. When their money ran dry, Katherine Kealoha pivoted to bank fraud, consummating it through a dizzying array of deception: false police reports, false statements, multiple stolen identities, an invented notary/secretary, medical malingering, and more.

Katherine Kealoha then wielded the law as a cudgel to silence and intimidate her victims and anyone else who dared question her behavior. She sought to have one victim—her own grandmother—declared legally incompetent; she told another victim—her minor ward—that his mom would go to prison if he told the truth about her actions; she relentlessly sued and harangued an ethics investigator for doing his job; she tricked another victim—her own uncle—into a multi-year inpatient drug rehabilitation program (though he had quit drugs), falsely assuring him it would benefit his legal case; and, worst of all, she sought to imprison the same uncle for a crime he did not commit. Along the way, Katherine Kealoha committed a vast number of crimes, shrouded by a thick web of lies. All the while, Katherine Kealoha cast herself as a champion of justice within the Honolulu law enforcement

community. Katherine Kealoha's flagrant abuses of power and boundless criminality demand a significant sentence.

Pursuant to the parties' agreements, the United States recommends a Guideline range of 121-151 months. As set forth below, the United States recommends a sentence of 144 months,[1] plus two years consecutive for her aggravated identity theft conviction, resulting in a total custodial sentence of 168 months; a supervised release term of 5 years; an order of criminal forfeiture; and an order of restitution as set forth in the parties' agreements.

I

FACTUAL BACKGROUND

██████████████████████ the parties' agreements fairly and accurate outline the facts and procedural history of this case. Many of these facts were proven during the lengthy trial in this case, and are well-known to the Court. Accordingly, the United States will not repeat them here. We only briefly add to the facts pertaining to the misprision conviction in CR No. 19-00015.

As part of her conviction for misprision of a felony, Katherine Kealoha admitted she cultivated a close relationship with her brother's co-conspirator (CC4)—someone Katherine Kealoha was then *prosecuting*—to reduce the

---

[1]    We recommend the statutory maximums for the conspiracy conviction in Case No. 17-00582 (60 months) and the misprision conviction in Case No. 19-00015 (36 months).

likelihood CC4 would reveal her brother's drug crimes. ███████ Indeed, the United States has obtained over 500 pages of messages exchanged between Katherine Kealoha and CC4 throughout 2016. As an example, here are two messages from Katherine Kealoha to CC4 in July 2016:

- "You are such a good person, now we need to vindicate you on many levels, while we have them be accountable!!!"
- "Just remember that I always got ur back, I love you and will protect you always!!!"

On this same day, CC4 texted Katherine Kealoha about CC4's own change-of-plea date (in the case Katherine Kealoha was prosecuting): "Ok he [referring to CC4's attorney] called you for my cop[2] date." Katherine Kealoha responded, "Omg, ruler of the world #ROW." After agreeing on the plan for the change of plea, the following exchange occurred:

CC4:          Go TEAM!

Kealoha:      GO TEAM!!! Can't wait for this s*** to be over.

CC4:          Ditto[.] Then we're free[.]

Katherine Kealoha's role as prosecutor in CC4's case extended at least through September 2, 2016. *See* CR NO. 17-00582 JMS-WRP, ECF No. 74-10 (9/2/2016 docket entry).

//

---

[2]       Or "change-of-plea" date.

II

THE ADVISORY GUIDELINES[3]

A.      THE CORRUPTION CONVICTIONS – GROUP ONE

1.      Base Offense Level and Specific Offense Characteristics

The counts of conviction in CR No. 17-00582 JMS-WRP are grouped for Guidelines purposes ("Group 1") because they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. USSG § 3D1.2(b). Pursuant to the Sentencing Agreement, the parties agree that the base offense level – factoring in two specific offense characteristics – is 19. ECF No. 927 at 4.

Next, to account for crimes committed under color of law, six levels should be added to the offense level under USSG § 2H1.1(b)(1)(B). There is no question the crimes here were committed under color of law. As the Supreme Court has stated, "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). "The color-of-law

---

[3]      The United States recognizes that the Court disagreed with its position that the parties agreed to the application of USSG § 2H1.1.  As stated at the December 16, 2019, hearing, the United States will recommend a sentence based upon the advisory Guidelines set forth in the Sentencing Agreement and Plea Agreement in CR Nos. 17-00582 JMS-WRP and 18-00068 JMS-WRP, respectively.  Therefore, the United States provides its bases for such advisory Guidelines and recommendation.

adjustment punishes abuse of authority, either actual or apparent, by an officer of the state." *United States v. Volpe*, 224 F.2d 72, 76 (2d Cir. 2000). "Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111 (1945); *see also id.* ("If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea."). Moreover, "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966).

The most straightforward example of misuse of power is what happened here: the police framing an innocent person with a crime, leading to a false arrest and prosecution. "This case involves illegal conduct by law enforcement officers during the detention and arrest of criminal suspects, conduct that *unquestionably took place under color of law*." *United States v. Reese*, 2 F.3d 870, 886 (9th Cir. 1993) (emphasis added). The co-conspirators here targeted Gerard Puana, cloaked with authority as police officers: they created false police reports identifying Puana as a criminal suspect; they accessed confidential law enforcement databases to glean

6

information about Puana; they accessed the HPD-owned surveillance device at the Kealohas' house, and then buried—before destroying—the video within the Criminal Intelligence Unit at HPD; they ordered prolonged and intrusive surveillance of Puana;[4] they falsely identified Puana, causing an unwitting officer to falsely arrest him; and finally, once the federal case against Puana was underway, they flashed their proverbial badges to keep Puana's prosecution afloat. In short, what happened here *could not have happened* absent the positions of state-sanctioned authority held by the co-conspirators.

And all the while, Katherine Kealoha directed and coordinated these police actions. Indeed, with respect to the June 2011 event, Kealoha admits that she ▮led an HPD search of Gerard Puana's residence, without a search warrant▮ ▮▮▮▮ ▮▮▮▮ Moreover, as the phone contact at trial demonstrated, Katherine Kealoha had continual contact with Louis Kealoha, Bobby Nguyen, and Derek Hahn at pivotal moments of the conspiracy. *See generally* ECF No. 970. That included arranging HPD surveillance at her deposition on June 19, 2013.

Furthermore, as established through testimony at trial, Katherine Kealoha used her authority as a deputy prosecuting attorney to file a motion—through proxies

---

[4]     The Declaration of Susan Ballard, Chief of the Honolulu Police Department, also sets forth detail supporting the color of law adjustment as to Katherine Kealoha.

in the Department of the Prosecuting Attorney—seeking to convert Gerard Puana's deferred prosecution into a felony conviction.

The six level upward adjustment for offenses committed under the color of law applies to Katherine Kealoha. This brings the offense level to 25.

2.   Chapter Three Adjustments

Next, Chapter Three adjustments are to be "made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct, *i.e.*, all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction." USSG Part B, Introductory Commentary (p. 351 of 2018 Guidelines). For example, "[i]n applying the abuse of trust adjustment, sentencing courts may now consider relevant conduct other than that involved in the offense of conviction." *United States v. Duran*, 15 F.3d 131, 133 (9th Cir. 1994).

Three adjustments apply to Katherine Kealoha's actions.

a.   *Vulnerable Victim - § 3A1.1(b)(1)*

The United States briefed the propriety of this enhancement ███████████ and we incorporate those arguments here. ███████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████

8

One, in admitting the financial fraud evidence at trial, the Court found that Katherine Kealoha's fraud against the Puanas "easily meets the Ninth Circuit's inextricably intertwined test." ECF No. 513 at 39. In other words, the evidence was "necessary to the government's coherent and comprehensible story and bears directly on the charged crimes." *Id.* It cannot be that such inextricably intertwined evidence would not constitute relevant conduct for the offense. *See, e.g., United States v. Mathews*, 874 F.3d 698, 708 (11th Cir. 2017) ("Martinez's gross negligence in not monitoring the Patient gave rise to Martinez's need to falsify the records a mere two hours later and is *at least relevant conduct that is inextricably intertwined with the offense conduct*.") (emphasis added); *United States v. Thabateh*, 40 F. App'x 392, 394 (9th Cir. 2002) (unpublished) ("The evidence of the attempted pseudoephedrine sale in November 1997 was admissible, both as Fed. R. Evid. 404(b) evidence of Thabateh's knowledge that the pseudoephedrine would be used to make methamphetamine, as well as for a non–404(b) purpose, since the November 1997 attempt was *inextricably intertwined* with the appellant's pattern of conduct. *Since it was properly admitted at trial, it was not error to include that attempted sale as relevant conduct under U.S.S.G. § 1B1.3*.") (emphasis added).

Second, Katherine Kealoha has admitted that the financial fraud facts ███████████████████████ were "true and accurate and should be considered as

'relevant conduct' under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1)." ECF No. 927 at 2-3.

Third, separate from the financial fraud, █████████████████, Gerard Puana was "particularly susceptible" to being framed with the mailbox theft due to Katherine Kealoha's efforts to make him out to be a criminal. ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ Trial testimony established, however, that the dogpiled allegations against Puana—coming from seemingly unassailable sources: the Chief of Police, a Deputy Prosecutor, and members of the Criminal Intelligence Unit— made unwitting officers more willing to blindly accept that Puana was a mailbox thief and burglar (and elder abuser, and so on). For instance, here is a trial exchange regarding the false burglary report between Bobby Nguyen's counsel and Dru Akagi, the homicide detective assigned to investigate the mailbox theft and burglary:

| | |
|---|---|
| Counsel: | And it's [referring to the false burglary report] listing Gerard Puana as a possible suspect. This is not unusual to you, correct? |
| Akagi: | Correct. |
| Counsel: | Given what you know or what you -- what you've been told about the mailbox theft, correct? |
| Akagi: | Correct. |
| Counsel: | And now I understand you're still investigating the mailbox case, correct? |
| Akagi: | Correct. |

| Counsel: | Okay. *But it makes sense to you that he would be a suspect given the allegations concerning the mailbox theft?* |
|---|---|
| Akagi: | Yes, that's possible. |
| Counsel: | And you were also -- and it was also relayed to you that there was this ongoing civil lawsuit? |
| Akagi: | Yes. |
| Counsel: | Okay. So those motives made sense to you? |
| Akagi: | (No response.) |
| Counsel: | *In other words, you didn't question that Gerard Puana was a possible suspect in this burglary case?* |
| Akagi: | No, I didn't. |

ECF No. 759 at 61-62 (emphasis added).

Florence Puana and Gerard Puana were quintessential vulnerable victims. This two-level enhancement brings the offense level to 27.

b.    *Aggravating Role - § 3B1.1*

Under USSG § 3B1.1, the offense level increases by four "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]" USSG § 3B1.1. More than one person can qualify as an organizer, leader, manager or supervisor in the criminal activity. *See* USSG § 3B1.1 app. n.4 (2018); *see also United States v. Barnes*, 993 F.2d 680, 685 (1993). Katherine Kealoha's role in this offense warrants this four-level

11

increase. The criminal activity involved five or more participants.[5] And, separately, as the facts made clear at trial (and as Chief Ballard's declaration also makes plain), this was an "otherwise extensive" criminal endeavor. These same facts, █████████ ████████████████████████, establish that Katherine Kealoha was the leader and organizer of the criminal activity. ████████████████████████████████████ ███████████ This four-level increase brings the offense level to 31.

      c.    *Abuse of Position of Trust / Use of Special Skill – § 3B1.3*

The United States briefed the propriety of this enhancement ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████ Katherine Kealoha repeatedly abused her position of trust in this matter. ████████████████████████████ █████████████ we briefly make four points:

First, Katherine Kealoha abused her position of trust while acting as Florence Puana's attorney. Instead of acting in the best interests of her client, Katherine Kealoha stole hundreds of thousands of dollars from Florence Puana and forced her to sell her cherished family home. These facts are inextricably intertwined with the

---

[5]    Six individuals—five police officers—were convicted in association with the criminal activity.

offenses proved at trial; and Katherine Kealoha agreed these facts are relevant conduct for purposes of sentencing.

Second, Katherine Kealoha repeatedly abused her position of trust as Gerard Puana's attorney and investment manager: Kealoha stole his investment money; created a fake trust in his name (notarized by Alison Lee Wong); and made herself trustee over his property.

Third, Katherine Kealoha abused her position of trust and used her special skill as a supervisory deputy prosecuting attorney. As the evidence at trial established, in approximately September 2013, Katherine Kealoha directed a subordinate prosecutor and others in the prosecutors' office to felonize and transmute Gerard Puana's diversion in order to further discredit him in the civil case and then ongoing federal criminal mailbox case. That motion to correct an illegal sentence was filed and denied. Had the motion been granted, a felony conviction would have been used to discredit Gerard Puana if he testified during his upcoming federal criminal mailbox trial. Moreover, these efforts were yet another stab at the heart of Gerard Puana's character – increasing the likelihood of success of the conspiracy to obstruct justice. Katherine Kealoha's abuse of trust and use of special skills are within the relevant conduct for obstructing justice.

Fourth, it cannot be said that Katherine Kealoha was acting as a private citizen when she targeted Gerard Puana. She threw her weight as a Deputy Prosecuting

Attorney to access HPD, direct and control police officers, gain the benefit of the doubt from investigators and the AUSAs from the District of Hawaii, and more. Katherine Kealoha repeatedly abused a position of trust in connection with her crimes.

In the event the six-level "color of law" enhancement under USSG § 2H1.1 is not applied, then this two-level enhancement for abuse of position of trust should apply.[6]

> d.   *Obstructing the Administration of Justice - § 3C1.1*

The Guidelines call for a two-level enhancement where the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense[.]" USSG § 3C1.1. Among other applications, this enhancement applies where a defendant "unlawfully influences" or attempts to unlawfully influence a witness, and where a defendant attempts to "suborn perjury." USSG § 3C1.1, cmt. n.4(A)-(B). Katherine Kealoha obstructed the administration of justice in multiple ways.

First, post-indictment, Katherine Kealoha tampered with a potential trial witness' testimony. The grand jury first returned the Indictment in this case on

---

[6]      *See* USSG § 2H1.1, cmt. n.5.

October 19, 2017. The Indictment alleged that Katherine Kealoha used the alias Alison Lee Wong. The next month, in November 2017, Katherine Kealoha mailed a letter to an individual the United States had previously interviewed about "Wong."[7] Katherine Kealoha's letter began, "I'm asking for 10 minutes of your time." As to "Wong," the typed letter stated, "They claim that Alison Lee-Wong is not a real person. At least a hundred people from my Arbonne group met her and even more people worked with her on the HI Law Enforcement Memorial Foundation Gala in Dec. of 2010." Then, handwritten into the margin of the page, KEALOHA wrote, "I know you met her!"



This witness has confirmed she has no memory of meeting Alison Lee Wong. That is no surprise, as Katherine Kealoha has since admitted she is Alison Lee Wong. There can be no other explanation for this letter than an attempt to influence a potential witnesses' testimony.

Second, ▮▮▮▮▮▮▮▮ there is sufficient evidence establishing that Katherine Kealoha obstructed justice by virtue of her repeated contacts with Bobby Nguyen immediately following his interview with the FBI in November 2015. ▮

---

[7]        This person had prior electronic communication with "Wong."

███████████   Thereafter, Bobby Nguyen appeared before the grand jury on two occasions and lied both times.

This two-level increase brings the offense level to 33.[8]

### B.    THE BANK FRAUD – GROUP TWO

The count of conviction for bank fraud is a separate group ("Group 2"). Pursuant to the parties' plea agreement, the parties will jointly recommend the bulk of the Guidelines applicable to Group 2, with the exception of an obstruction of justice enhancement, addressed below. *See* CR No. 18-00068, ECF No. 203 at 14-15.

Under USSG § 2B1.1, the base offense level for Group 2 is 7. The loss in this case—Ransen Taito and Ariana Taito's trust money, used to pay off several fraudulent loans obtained by the Kealohas and otherwise spent by Katherine Kealoha—exceeds $150,000, resulting in an increase of 10 levels. *See* § 2B1.1(b)(1)(F); ███████████ The parties further agree and the facts set forth in the parties' plea agreement █████████ establish the following enhancements:

- +2 for obtaining more than $1 million from a financial institution[9]
- +2 for abuse of position of trust[10]

---

[8]     Omitting the 2-level abuse of position of trust enhancement.

[9]     *See* USSG § 2B1.1(b)(17).

[10]     *See* USSG § 3B1.3███████████

The sole enhancement not agreed to by the parties related to Group 2 – obstruction of justice under § 3C1.1 – readily applies. ██████████████

██████████, Katherine Kealoha █unlawfully influenced R. Taito and [J.] Ebersole to lie to the Grand Jury.█ With respect to Taito, Katherine Kealoha instructed him and his sister to lie to the grand jury, telling them that their mother could go to jail if they told the truth. ████████████████████████████████

████████████████████████████████

The total offense level for Group 2 is 23.

C.      THE MISPRISION CONVICTION – GROUP THREE

The parties are in agreement as to the Guidelines with respect to Katherine Kealoha's conviction for misprision of a felony, to include a two-level enhancement for abuse of position of trust under § 3B1.3. *See* CR No. 19-00015, ECF No. 86 at 12. The abuse of position of trust enhancement is based on Katherine Kealoha's actions as a Deputy Prosecuting Attorney, taking over an investigation implicating her and her brother's crimes, and cultivating relationships—as outlined above—with a defendant she was prosecuting. The total offense level for Group 3 is 21.

D.      COMBINED OFFENSE LEVEL AND RESULTING RANGE

Under the grouping provisions of the Guidelines, the highest base offense level is 33. *See* USSG § 3D1.1. There is a one point increase for multiple offenses (totaling 1½ units) under § 3D1.4. Next, the United States recommends a two-level

downward adjustment for acceptance of responsibility. This brings the final combined offense level to 32.

Katherine Kealoha has zero criminal history points and is placed in Criminal History Category I. At a level 32, and Criminal History Category I, the advisory Guideline range is 121 to 151 months. With this range in mind, the United States addresses the sentencing factors set forth in 18 U.S.C. § 3553(a).

III

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

Section 3553(a) requires that the Court consider, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentenced imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (4) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and (5) the need for the sentence imposed to avoid unwarranted sentencing disparities. We address these matters in turn.

A.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

From no later than 2004 through 2017, Katherine Kealoha, a member of the bar, sworn to conduct herself with dignity and civility, to faithfully discharge her duties as attorney, counselor, and solicitor, and to give due consideration to the legal needs of those without access to justice, repeatedly failed at these core duties and

18

responsibilities. Instead, she used her education, knowledge, experience, and professional and personal relationships to do evil. Her criminal conduct spanned nearly two decades. She not only victimized her own family, but also those she had sworn a sacred oath to protect and defend. As a prosecutor, Katherine Kealoha abused the awesome power entrusted to her to do justice to advance her own greedy interests. The nature and circumstances of the offense support the recommended sentence.

   B.   <u>HISTORY AND CHARACTERISTICS OF THE DEFENDANT</u>

███████████████████████████████████████████

The United States notes that Katherine Kealoha's crimes, unlike most defendants, were not borne out of personal adversity or financial desperation, but out of greed and malice. Additionally, Kealoha  was a highly educated and <u>trusted</u> member of her family and the community. The scope of her unlawful conduct while an attorney and prosecutor negates any mitigating value of her lack of a prior criminal record.

   Furthermore, ████████████████████████ the United States notes for the Court that Katherine Kealoha has previously overstated, or completely feigned, illness to fend off consequences for her own actions. On several occasions, Kealoha has openly stated she had cancer, or some other debilitating illness, and had received treatment at medical institutions such as the "MD Anderson Cancer Center in Texas," and the "Sloan Kettering Cancer Center in New York." However, both

medical facilities have confirmed that Katherine Kealoha has never been a patient there. ███████████████████ Katherine Kealoha fabricated a medical bill to influence a loan underwriter to approve Kealoha's loan application. ███████████

Katherine Kealoha has also regained her health when convenient. On or about March 7, 2013, Florence Puana and Gerard Puana filed the civil complaint against Kealoha. *See Puana v. Kealoha*, 1CC131000686 (Haw. Cir. Ct.). Throughout that proceeding, Kealoha delayed the conclusion of her deposition several times. On February 21, 2014, for example, Katherine Kealoha's attorney supplied a doctor's note and informed opposing counsel that Katherine Kealoha was "not presently able to sit for her continued deposition." And on May 12, 2014, Katherine Kealoha's attorney filed a declaration referring to Kealoha's "rather debilitating health problems" as the reason for delaying her deposition several times.[11]

On May 1, 2014, however, Katherine Kealoha—in her capacity as a Deputy Prosecuting Attorney for the City and County of Honolulu—was healthy enough to present a 414-count indictment before the Hawaii state grand jury. *See, e.g., Hawaii v. Yoshimura*, *et al.*, 1PC141000717 (Haw. Cir. Ct.) (414-count indictment unsealed on May 5, 2014); *Yoshimura v. Kaneshiro, et al.*, 18CV00038-LEK-KSC, Doc. No.

---

[11] Katherine Kealoha's then-doctor informed the United States that Kealoha requested doctor's notes to avoid sitting for her deposition. The doctor's excuses were based solely on Kealoha's self-reported symptoms.

38 at ¶ 5(d) (Katherine Kealoha admitting she presented evidence before the state grand jury on May 1, 2014).

The United States does not contend Katherine Kealoha has no health issues. However, given this past history, there is reason to be leery of claims of serious medical conditions.

C.   THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT

A substantial sentence is necessary to adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offenses here. Katherine Kealoha ruthlessly stole the Taito children's inheritance after she was appointed to guard and protect them.  She then stole her nonagenarian grandmother's dream of passing her family home to her children, hoping her kupuna wahine would pass before anyone discovered her trickery. However, when her plan began to unravel, and her uncle stepped in to help grandma, he needed to be eliminated too.  Initially Katherine Kealoha seized upon his unfortunate encounter with his neighbor over a parking space, to turn the family against him, to manipulate the legal system to banish him to Sand Island for three years as a drug addict. When that effort failed, she once again utilized her legal prowess and connections to target an innocent man for a crime she knew he had not committed. She repeatedly attacked and maligned his character and reputation, right up through the trial in this case.  Not

satisfied with those efforts, Katherine Kealoha then chose—repeatedly and flagrantly—to obstruct and interfere with the search for the truth. The public is not surprised when criminals stray, but prosecutors and law enforcement officers are held to a higher standard and are expected to seek justice and uphold the law.

Harming her perceived enemies was not her only abuse of power. Katherine Kealoha also misused and abused her prosecutorial power and position to conceal and protect her brother from suffering the righteous consequences flowing from prosecution for diverting and distributing dangerous controlled prescription drugs on the community. As with her duties to her wards and family members, Katherine Kealoha abandoned her duties and responsibilities to keep the people of the City and County of Honolulu safe from the scourge of drug abuse and all of its attendant social ills. Yet another broken vow.

Additionally, Kealoha's actions caused significant harm to the criminal justice system, the courts, law enforcement agencies, and the rule of law. Damage to the integrity and reputation of the Honolulu Police Department was particularly acute. *See, e.g.*, ECF No. 969, Ballard Decl. ¶ 9. "An officer who causes people to question the integrity and impartiality of law enforcement undermines the rule of law and disrupts the functioning of all aspects of law enforcement in both the executive and judicial branches of government. Confidence in our legal system is undermined when those who are charged with enforcing the law choose to break the law instead."

*United States v. Walker*, 21 F. Supp. 2d 1288, 1293 (N.D. Okla. 1997); *see also United States v. Spano*, 411 F. Supp. 2d 923, 940 (N.D. Ill. 2006) ("Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants").

### D.   AFFORDING ADEQUATE DETERRENCE

A significant sentence is necessary to deter other lawyers, prosecutors, and public officials from engaging in criminal activity like Katherine Kealoha. Crimes by law enforcement are particularly difficult to expose and prosecute. Accordingly, this is an area of crime that requires robust deterrence. *See, e.g., United States v. Hooper*, 566 F. App'x 771, 773 (11th Cir. 2014) (unpublished) (general deterrence is "especially compelling in the context of officials abusing their power"); *Spano*, 411 F. Supp. 2d 923, 940 (N.D. Ill.) ("Unlike some criminal justice issues, the crime of public corruption can be deterred by significant penalties that hold all offenders properly accountable."). A low sentence will fail to adequately deter criminal conduct.

### E.   AVOIDING UNWARRANTED SENTENCING DISPARITIES

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The United States is unaware of any case involving similar conduct as that present here. In this regard, the Guidelines themselves serve as a bulwark against sentencing disparity. *See United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . .

are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated defendants."); *United States v. Smith*, 445 F.3d 1, 7 (1st Cir. 2006) (noting that "the guideline range . . . is the principal means of complying with" the goal of avoiding unwarranted sentencing disparity); *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that guidelines "help to maintain uniformity in sentencing throughout the country").

The United States' sentencing recommendations in this case properly balance the history, conduct, roles, and acceptance of responsibility of the co-defendants and results in no unwarranted sentencing disparities. *See, e.g., United States v. Winters*, 278 F. App'x 781, 783 (9th Cir. 2008) (unpublished) ("A necessary corollary of plea bargaining is that defendants who go to trial may receive greater sentences than similarly situated defendants who do not."); *United States v. Winters*, 278 F. App'x 781, 783 (9th Cir. 2008) ("A sentencing reduction based on an individual's acceptance of responsibility and assistance to the prosecution does not create an 'unwarranted' disparity. The district court in this case clearly weighed the relative roles of each defendant."); *United States v. Perez-Pena*, 453 F.3d 236 (4th Cir. 2006) ("By comparing the sentences of defendants who helped the Government to those defendants who did not . . . is comparing apples and oranges."); *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc) (co-conspirators "presented

24

very different circumstances" because one "did not participate in the plan to blow up LAX nearly to the extent that Ressam did," and the other pleaded guilty).

F.    PROVIDE RESTITUTION TO THE VICTIMS

The parties have agreed to provide restitution to the victims in their Sentencing Agreement and Plea Agreement in each of the respective cases.

IV

SENTENCING RECOMMENDATIONS

A.    THE CUSTODIAL SENTENCE

Based on the terms of the Sentencing Agreement in CR No. 17-00582 JMS-WRP, the United States recommends the following custodial sentences, which in total, equal 168 months imprisonment:

- Count 1 – Conspiracy: **60 months** in prison (statutory maximum)
- Count 2 – Obstruction: **144 months** in prison (concurrent)
- Count 6 – Obstruction: **144 months** in prison (concurrent)
- Count 8 – Obstruction: **144 months** in prison (concurrent)

Based on the terms of the Plea Agreement in CR No. 18-00068 JMS-WRP, the United States recommends the following custodial sentence:

- Count 3 – Bank Fraud: **144 months** in prison (concurrent)
- Count 10 – Aggravated Identity Theft: **24 months** in prison (consecutive)

Based on the terms of the Sentencing Agreement in CR No. 19-0015 JMS-WRP, the United States recommends the following custodial sentence:

- Count 2 – Misprision: **36 months** in prison (statutory maximum)

25

B.    <u>SUPERVISED RELEASE</u>

Based on the terms of the Sentencing Agreement in CR No. 17-00582 JMS-WRP, the United States recommends the following supervised release terms:

- Count 1 – Conspiracy: **3 years**
- Count 2 – Obstruction: **3 years** (concurrent)
- Count 6 – Obstruction: **3 years** (concurrent)
- Count 8 – Obstruction: **3 years** (concurrent)

Based on the terms of the Plea Agreement in CR No. 18-00068 JMS-WRP, the United States recommends the following supervised release term:

- Count 4 – Bank Fraud: **5 years** (concurrent)
- Count 10 – Aggravated Identity Theft: **1 year** (concurrent)

Based on the terms of the Plea Agreement in CR No. 19-00015 JMS-WRP, the United States recommends the following supervised release term:

- Count 2 – Misprision: **1 year** (concurrent)

C.    <u>RESTITUTION</u>

The United States will submit a separate proposed order for restitution. Pursuant to the terms of the Sentencing Agreement in CR No. 17-00582 JMS-WRP, the United States recommends that Katherine Kealoha pay restitution to the follow victims/victims' estates based upon the agreed-upon amounts:

- Victim – Gerard Puana: **$46,261.00**
- Victim – Florence Puana: **$243,453.96**

Pursuant to the terms of the Plea Agreement in CR No. 18-00068 JMS-WRP, the United States recommends that Katherine Kealoha pay restitution to the follow victims based upon the agreed-upon amounts:

- Victim – Ransen Taito: **$81,384.91**
- Victim – Ariana Taito: **$83,884.91**

### D.   FINES AND SPECIAL ASSESSMENTS

The United States does not recommend a fine to ensure that Katherine Kealoha uses her financial resources to pay restitution to the victims of her offenses.

The United States recommends a special assessment of $100.00 per count of conviction. In CR No. 17-00582 JMS-WRP, Katherine Kealoha was convicted of four counts; in CR No. 18-00068 JMS-WRP, she was convicted of two counts; and in CR No. 19-00015 JMS-WRP, she was convicted of one count. Accordingly, the Court should impose a total of $700 in special assessments.

### E.   CRIMINAL FORFEITURE

The United States has submitted a proposed order of criminal forfeiture based upon the agreements in both cases.

## VI

## CONCLUSION

Katherine Kealoha wielded great power as a private attorney over the affairs of her wards and their assets. She enjoyed the unconditional love of her grandmother as she implored Florence Puana to "trust" her. The citizens of Honolulu trusted her

to deal rightly, seek justice, and correct oppression as a supervisory prosecutor. Kealoha betrayed her trust and power in the starkest of ways—stealing from the needy, preying on the elderly, and vindictively framing an innocent man for a crime she knew he did not commit. She conspired with Louis Kealoha, Derek Hahn, and Bobby Nguyen to obstruct justice and conceal their malevolent acts, which included perjured testimony in this federal courthouse. In her vast wake, Katherine Kealoha left behind countless victims – Florence Puana, Gerard Puana, Ransen Taito, and Ariana Taito, to name just a few.  For all of her criminal conduct, the Court should adopt the United States' recommendations and sentence Katherine Kealoha accordingly.

Dated: March 13, 2020                    Respectfully submitted,

                                         WILLIAM P. BARR
                                         United States Attorney General
                                         ROBERT S. BREWER, JR.
                                         United States Attorney

                                         *s/ Michael G. Wheat*
                                         MICHAEL G. WHEAT
                                         JOSEPH J.M. ORABONA
                                         JANAKI S. GANDHI
                                         COLIN M. MCDONALD
                                         Special Attorneys to the Attorney General

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE P. KEALOHA,<br><br>Defendant. | CR NO. 17-00582 JMS-WRP<br>CR NO. 18-00068 JMS-WRP<br>CR NO. 19-00015 JMS-WRP<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

I, Michael G. Wheat, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893.

I am not a party to the above-entitled action. Upon filing, I will serve the foregoing on the following individuals:

1. Gary Gurmail Singh
   Topa Financial Center
   700 Bishop Street, Ste 2000
   Honolulu, HI 96813
   Email: gary@garysinghlaw.com
   Counsel for Katherine Kealoha

2. Darsie J.T. Ing-Dodson
   Senior U.S. Probation Officer
   Honolulu, HI 96850-0001
   darsie_ing-dodson@hip.uscourts.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2020

*s/ Michael G. Wheat*
MICHAEL G. WHEAT
Special Attorney to the Attorney General